Sentencing Hearing

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                             File No. 11-20574

JEFFREY SCHUETT,

        Defendant.

_____/

SENTENCING

BEFORE THE HONORABLE THOMAS L. LUDINGTON

United States District Judge

United States Post Office Building

1000 Washington Avenue

Bay City, Michigan  48708

Monday, December 17, 2012

Sentencing Hearing

2

APPEARANCES:

For the Plaintiff:        LIBBY KELLY DILL (P71276)
                          U.S. Attorney's Office
                          Eastern District of Michigan
                          101 1st Street
                          Suite 200
                          Bay City, Michigan  48708
                          Phone: (989) 895-5712
                          libby.dill@usdoj.gov


For the Defendant:        JUDITH S. GRACEY (P39766)
                          Law Offices of Judith S. Gracey
                          2055 Orchard Lake Road
                          Sylvan Lake, Michigan    48320
                          Phone:  (248) 338-7800
                          judithsgracey@aol.com


ALSO PRESENT:             Marvin Burns
                          Probation Officer


To Obtain a Certified Transcript:

PEG L. GOODRICH, CSR-0258, RMR
Federal Official Court Reporter
www.transcriptorders.com

Sentencing Hearing

3

# T A B L E   O F   C O N T E N T S

                                                                    PAGE

STATEMENTS BY THE COURT:                                             4


ALLOCUTION:

     By Ms. Gracey                                                   6
     By the Defendant                                               8


STATEMENT BY THE GOVERNMENT:

     By Ms. Dill                                                    12


SENTENCING BY THE COURT:                                           17


CERTIFICATE OF COURT REPORTER:                                     21


EXHIBITS:                                  IDENTIFIED RECEIVED

     None marked.

Sentencing Hearing

4

1          Bay City, Michigan

2          Monday, December 17, 2012

3          3:44 p.m.

4      (Court, counsel and defendant present)

5      THE CLERK:  Calling the case of the United States of

6  America versus Jeffrey Schuett, Case No. 11-20574.

7      THE COURT:  Good afternoon.  If we could have counsels'

8  introductions, please.

9      MS. DILL:  Good afternoon, your Honor.  Libby Dill on

10  behalf of the government.

11      MS. GRACEY:  Your Honor, for the record, Judith Gracey

12  on behalf of Mr. Schuett who stands to my left.

13      THE COURT:  Good afternoon Miss Gracey and good

14  afternoon, Mr. Schuett.  We are present for Mr. Schuett's

15  sentencing hearing.

16      The Court's records reflect the fact that Mr. Schuett

17  entered a guilty plea before Judge Binder on September the 6th of

18  this year.  We accepted the guilty plea on report and

19  recommendation on September the 22nd.

20      The gentleman entered his plea to the offense of felon

21  in possession of a firearm.  It's a Class A felony under federal

22  law, punishable under the circumstances by a term of not fewer

23  than 15 years in custody and up to lifetime custody.  The Court

24  is authorized to impose a term of up to five years of supervised

25  release following the term of custody and also to impose a fine

Sentencing Hearing

5

1  of up to $250,000 at the time of sentencing.

2          After the gentleman entered his plea, he was interviewed

3  by Probation Officer Burns who is present.  Good afternoon, sir.

4  The pre-sentence investigation report was circulated back in

5  October.

6          Miss Gracey, have you had a chance to review the report

7  and review it with Mr. Schuett?

8          MS. GRACEY:  I have, your Honor.

9          THE COURT:  Any additions or corrections that have not

10  received previous attention with Mr. Burns?

11          MS. GRACEY:  No additional corrections or deletions that

12  have not already received --

13          THE COURT:  The report contained an advisory guideline

14  calculation that corresponded with the Rule 11.  It reflected a

15  base offense level as a result of the fact that the gentleman

16  scored as an armed career criminal.  He was accorded the

17  three-level reduction for his acceptance of responsibility.  He

18  was also, as a result of the determination that he was a

19  qualifying armed career offender, placed in Category VI.

20          The guideline recommendation of 168 months to 210 months

21  is elevated on the minimum term to 180 as a result of the

22  statutory minimum.

23          Any challenges to the scoring, Miss Gracey?

24          MS. GRACEY:  No, judge.

25          THE COURT:  Miss Dill, any additions or corrections to

Sentencing Hearing

6

1  the report, any challenges to the scoring, ma'am?

2          MS. DILL:  No, your Honor.

3          THE COURT:  Ms. Gracey, we will entertain allocution.

4          MS. GRACEY:  Thank you, your Honor.

5          Judge, I would rely heavily on my -- on defendant's

6  sentencing memorandum that was filed with the Court on -- last

7  week.  Specifically, your Honor, as the Court knows and has

8  already indicated on the record and as far as the advisory

9  guidelines, there was no challenge to that.

10          I would respectfully ask the Court to consider as it

11  relates to sentencing Mr. Schuett, to give him credit for the

12  time subsequent from the time that he was arraigned on the

13  charges and detained by the -- by the government.  He was serving

14  a sentence for a probation violation on the state level.

15  However --

16          THE COURT:  You indicated probation in your memorandum.

17  Was the gentleman not on parole?

18          MS. GRACEY:  I misspoke and I -- I misstated that and

19  I'm glad that the Court corrected that on the record.  It was for

20  a parole violation and he is serving a sentence as it relates to

21  that.  And I apologize that it was an inadvertent error and I

22  again stated that on the record but clearly, he was on parole and

23  is serving a parole violation on the state level.

24          With that being said, judge, I would respectfully ask

25  the Court to give at the bare minimum at sentencing for today,

Sentencing Hearing

7

1  credit at the time on October 14, 2011, as the date that there

2  was a detention hearing held and my client consented to

3  detention, despite the fact that he was in state custody as

4  well.

5        The reason that he consented and then decided to stay

6  within the state facility was merely for convenience, not taking

7  anything away from consenting to detention.  So it is defendant's

8  position that he should in fact receive the credit from the time

9  that he was detained or held by consent for detention on October

10  14th of 2011.

11        I think it is discretionary with the Court as it relates

12  to giving him that credit at that time, your Honor, versus

13  giving -- having the sentence start at today's date which would

14  be the sentencing date.  And I would respectfully ask the Court

15  to do that.

16        We have a situation where although, again, the

17  guidelines are advisory, a mandatory sentence here that quite

18  frankly, I think -- and the Court sat through the suppression

19  hearing and heard testimony -- Mr. Schuett has always admitted

20  his responsibility and his guilt to his actions, albeit

21  mitigating factors, not excusing the fact that he was ineligible

22  to carry a gun at that time.  But because of where he was living

23  and the high crime area that he was forced to live in for

24  economic reasons, et cetera, he did have a gun.  He took

25  responsibility for that.

Sentencing Hearing

8

1    However, I don't think, given the fact that he was then

2    subsequently arrested and the Court heard testimony from the

3    agents that were basically in the area, just looking to stop

4    people, and Mr. Schuett, the testimony was that he crossed the

5    street or jaywalked and committed a civil infraction and that

6    allowed them to frisk him and to then later find the gun that Mr.

7    Schuett had.

8    I'm not by way of excusing his behavior, judge, and

9    clearly, he was ineligible to carry a gun, having been a felon,

10   but I would state to the Court that I don't think that those --

11   that the legislature had a person as -- such as Mr. Schuett in

12   mind in imposing the mandatory 15 years.  And I would

13   respectfully ask the Court to temper that with some type of mercy

14   in fashioning a sentence.

15   And also, that the Court would give him credit for the

16   time once he was detained on the October 14th, 2011 date.

17   THE COURT:  Thank you.

18   Mr. Schuett, any remarks that you would add to those

19   fine remarks that have been made by your attorney on your behalf.

20   THE DEFENDANT:  Yes, I do, your Honor.  I have something

21   I have written out that I would like to read to the Court if I

22   can.

23   THE COURT:  Sure.

24   THE DEFENDANT:  Your Honor, I'm aware the Court must

25   impose the 15-year mandatory minimum sentence for me for the

Sentencing Hearing

9

1 crime I committed.

2         In my case, I believe this to be an injustice since in

3 my eyes and many others, the punishment does not fit the crime.

4 I'm also aware of Congress' intention with the Armed Career

5 Criminal Act when they say this law is tailored to a particular

6 type of offender who possesses a gun but I'm confused on how they

7 are able to punish me for crimes they believe I might possibly

8 commit.

9         I say that I am not -- I am not a career criminal.

10 Since my release from prison, I've successfully held numerous

11 jobs and attempted to support me and my children as best as I

12 could.  From the time I possessed the handgun to the time the

13 officers found it my possession, not one second of that time did

14 I have any type of malicious intention -- any type of malicious

15 intention with that firearm whatsoever.

16         I was living in a tougher neighborhood for various

17 social and economical reasons and was witness to several

18 incidents that made me very fearful.  That was my one and only

19 sole purpose of possessing the handgun.  And to say because I've

20 made several stupid mistakes as a younger man, that now because I

21 possess a firearm and I will be committing crime with said gun,

22 is not proven beyond a reasonable doubt.

23         I admit I was wrong for possessing the gun and I wish I

24 could change it so I could see my kids grow up but I will accept

25 responsibility, better my life and to try to change the law

Sentencing Hearing

10

1   through Congress and give the judges the discretion back that

2   this mandatory minimum has taken.

3          Thank you, your Honor.

4          THE COURT:  Thank you.  This was a .22 caliber

5   semi-automatic pistol.  How did you happen to choose that

6   weapon?

7          THE DEFENDANT:  I chose the weapon, your Honor, because

8   it was a smaller caliber handgun and if -- if I did end up having

9   to use the gun, then, the bullets would stop by hitting

10  something, you know, that -- that was my justification for having

11  that -- that caliber of gun, you know.

12         THE COURT:  How long did you have it?

13         THE DEFENDANT:  About two months.

14         THE COURT:  Did you acquire it on the street?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Was there a particular reason that you

17  thought you should have it on July 19th, 2011?

18         THE DEFENDANT:  Me and the mother of my -- my -- my

19  daughter's brothers were watching the fireworks in Saginaw.  We

20  went to a party after the fireworks were shown and one of the

21  guys there decided to shoot his gun off in the air.  There was

22  another group of individuals down the street.  They thought we

23  were shooting at them and so they started shooting back at us and

24  they knew me and they knew where I lived, your Honor, so they

25  ended up a couple two, three days later, shooting my house up.

Sentencing Hearing

11

1  And that happened on two different events and one event, my

2  daughter was in the house with me.

3        And so I just decided to, when I go to the store to buy

4  a pack of cigarettes, that I would carry this gun with me because

5  I figured they were trying to kill me.

6        THE COURT:  The pre-sentence report reflected the fact

7  that you had had employment in numerous locations since you

8  paroled but they were awaiting verification.  I asked your

9  probation officer today whether he had obtained any of the

10 verification.  They had not responded.

11       What type of work were you doing?

12       THE DEFENDANT:  Well, when I got out of prison, while I

13 was in prison, I received my master of mechanics license through

14 the state certification system, through the Secretary of State.

15 I got out and I had a -- found a job in a place that installs

16 wheelchair lifts into vans, called clock conversions out of Grand

17 Rapids.  I worked there for 18 months.

18       After that, in Saginaw, I was working at a Beau Jacks on

19 Highway M-13 for three or four months.  Then I worked at the

20 Muffler Man in Frankenmuth for a couple months.  And then at the

21 time I was arrested, I was in the process of getting a job for

22 the Northwest Tire Company out in Shields.

23       THE COURT:  I appreciate your remarks.  I appreciate the

24 information.

25       The government?

1       MS. DILL:  Your Honor, regarding the statements alleged

2   in the defendant's sentencing memorandum, defendant pleaded

3   guilty to an unarmed robbery in state court on December 3rd of

4   2001.  He was on parole for that offense when law enforcement

5   picked him up for this offense when he had a firearm on his

6   person.  He was subsequently charged here.

7       Defendant is subject to that statutory mandatory minimum

8   penalty of 15 years pursuant to Section 924(e).  The mandatory

9   minimum penalty must be imposed because defendant neither

10  provided substantial assistance nor is he safety valve eligible.

11  The Sentencing Commission recommends imposition of a sentence for

12  the instant offense to run consecutively to the sentence imposed

13  for the revocation according to the sentencing guidelines,

14  Section 5G1.3(c), Application Note 3(C).

15      The defendant cited several cases in the memorandum from

16  the Seventh Circuit, both *Ross* and *Cruz*.  I believe this case can

17  be differentiated from those cases because there was a same

18  course of conduct.

19      In both of those cases, defendant was charged with a

20  firearms violation in Federal Court while the State Court handled

21  the home invasion equivalent charge.  So they were actually part

22  of the same transaction or occurrence, where here, we have two

23  separate crimes.  We have an unarmed robbery in 2001 and then

24  subsequent federal conviction in 2011.

25      Defendant has an extensive criminal history here which

Sentencing Hearing

13

1   is why he is being charged with 924(e).  Those include serious

2   violent crimes and a consistent pattern of probation/parole

3   violations.  I do not believe the 3553(a) factors warrant a

4   variance and request this Court sentence defendant pursuant to

5   the Rule 11 Agreement.

6            In 1999, defendant was convicted for possession of

7   marijuana.

8            In 2000, he was convicted for fleeing a police officer

9   in the third degree.  The police reports for this conviction

10  indicated that while he was fleeing, he was in a school zone.

11  There are approximately 50 to 60 children in that area.  With

12  that crime, he failed to complete his terms of probation.  He was

13  not able to complete inpatient treatment for substance abuse.

14  And then he absconded from probation.

15           In 2000, he was convicted of assault with intent to do

16  great bodily harm less than murder -- or his -- I'm sorry,

17  serious bodily harm less than murder which was pled down to

18  assault with intent to murder.  The victim in this particular

19  crime was his mother.  Defendant put a knife up to her and cut

20  her on her arm.  He had assaulted her both in the car and when

21  they got back home that day.  He failed to complete his term of

22  probation on that charge as well.

23           In 2001, the defendant pled guilty to unarmed robbery.

24  It was originally charged as an armed robbery.  Sheriff's

25  Department responded to a call for an armed robbery.  Defendant

Sentencing Hearing

14

1  and another individual had attacked the victim by luring him into

2  a location but with a female.  The victim suffered multiple

3  lacerations, contusions and bruising to the face and the hands of

4  the defendant show he used his fists and a bottle to assault the

5  victim and he also took his wallet.

6           After that, he had a series of misdemeanor violations

7  and a failure to appear.

8           Your Honor, I believe those crimes are serious, they are

9  violent and show a consistent pattern of the defendant and I

10  believe the Rule 11 Agreement accurately reflects a proper

11  punishment in this case.

12           Thank you.

13           THE COURT:  Thank you.

14           Mr. Schuett, I have just a couple more questions. And

15  that, I guess, would be related to your parents.  Despite some

16  pretty rocky experiences, they apparently are -- remain

17  emotionally supportive.

18           THE DEFENDANT:  Yes, your Honor.  Yes, they do.

19           THE COURT:  Why should they do that?

20           THE DEFENDANT:  Why should they do that, your Honor?

21  They -- they don't have to but they feel that they are my parents

22  and they love me so --

23           THE COURT:  You're 31 years old.

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  You've got an extensive criminal history,

Sentencing Hearing

15

1   recognizing you've also got a felony background.  And you're

2   carrying a weapon.  I don't understand the judgment.  Can you

3   help me get a little better understanding for what would suggest

4   to you that you were safer with a weapon than you were

5   potentially ending up facing a long prison commitment for

6   maintaining possession of that weapon?  I'm trying to understand

7   your judgment.

8            THE DEFENDANT:  Well, your Honor, another instance that

9   happened when I went into one of the convenience stores there in

10  the city, you know, I go up and pay for things, people would see

11  me.  You know, I did keep jobs, I can fix cars so I had money.

12  They seen me with money.

13           A couple times, you know, people were making comments to

14  me like, I'll take your money and, you know, I felt overwhelmed

15  by the fact there were at least three or four of them and only

16  one of me and things like that.  And you know, I would hear

17  gunshots in my neighborhood at least twice a week, I'd hear some

18  gunshots being fired.  So -- and with them shooting my house up,

19  I figured that if I'm walking down the street and they drive up

20  on me in a car and they start shooting at me and I do not shoot

21  back at them, they will just walk up to me and kill me right

22  there.

23           I mean, like I said, your Honor, I was a victim of

24  circumstances and the situation I was around people that they

25  thought that they were in a gun battle with each other and I was

Sentencing Hearing

16

1  involved in it because I was just standing there.

2          THE COURT:  And I appreciate that.  But to be measured

3  against that, you knew that there were very substantial penalties

4  that were associated with possessing that weapon, correct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And decided to carry it anyway.

7          THE DEFENDANT:  I was not aware that there was the Armed

8  Career Criminal Act and the mandatory 15-year sentence.

9          THE COURT:  Sure.  And I'm sure that part probably took

10  a fair amount of discussion with your attorney.  It is an

11  extensive period of time.  But respectfully, I was trying to

12  measure that against your earlier comments.

13          There are at least in my view, some positive aspects

14  about you and your life that come through the pre-sentence

15  report.  You have the intellectual capability to do better than

16  you have.  You have made the effort even to at least commence

17  community college participation.  You have held down some regular

18  employment that reflects your -- at least your ability to satisfy

19  an employer for a period of time.

20          On the other hand, your -- your behavior has been

21  impulsive, short-sighted, and on occasions, violent.  And it's

22  those pieces that I'm trying to put into perspective.  And I hope

23  you are trying to put it into perspective.

24          Most of these activities have taken place during a

25  period of time when you were a young man.  And you're aware of

Sentencing Hearing

17

1  the fact that you're going to be a bit more mature when you leave

2  custody at this point and my sincere hope and belief is that you

3  turn a corner and that you are able to place, particularly the

4  care and concern that you have and have expressed for your

5  daughters first and primary in your life.

6       As we've talked and as counsel have covered, it's the

7  extensive criminal history that in many respects drives the

8  sentence today, together with the gravity of the particular

9  offense involved.

10      Pursuant to the Sentencing Reform Act and giving

11  separate consideration to the 3553(a) factors which we've

12  identified here in concluding, we hereby commit the gentleman to

13  the custody of the United States Bureau of Prisons for a term of

14  180 months.  The term is to run concurrent with the gentleman's

15  parole sentence with the State Department of Corrections.

16      Upon the gentleman's release from custody, he is to be

17  placed on supervised release for a term of three years.  He is to

18  pay the special assessment of $100 which is due presently if it's

19  not been previously paid.

20      We will waive the imposition of a fine, costs of

21  incarceration and costs of supervision.  He does not have the

22  financial resources to reimburse the government for those

23  expenses.

24      Drug testing is ordered.

25      While he is on supervision, he is to respect the

Sentencing Hearing

18

1   standard conditions of supervised release that have been

2   established by the United States District Court for the Eastern

3   District of Michigan.

4          He is also to comply with the following special

5   conditions:

6          He is to participate in a program approved by the

7   Probation Department for anger management if his probation

8   officer considers it necessary.

9          He is to participate in a program approved by the

10  Probation Department for mental health counseling if his

11  probation officer considers that necessary.

12         He is to take all medications prescribed by his

13  physician, including a psychiatrist, in the dosages and at the

14  times that are proposed by the doctor.  If he is prescribed a

15  medication, he is to take it.  He is not to discontinue any

16  medications against medical advice.

17         He is also to establish a plan for the Montcalm County

18  Friend of the Court to satisfy the child support arrearage with

19  that agency.  He is to abide by that plan until the arrearage is

20  paid.

21         Miss Gracey, any questions concerning the terms of the

22  sentence or objections that you've not had a previous opportunity

23  to make?

24         MS. GRACEY:  No objections, your Honor.  Just for

25  clarification, the Court said it would -- the sentence would run

Sentencing Hearing

19

1  concurrent with parole commencing when, sir?

2          THE COURT:  It would run from the determination by the

3  parole board, I believe.  It would not commence with the -- well,

4  the interesting point is that we have to first figure it out

5  under state law and it would probably be with his physical

6  detention.

7          MS. GRACEY:  Okay.

8          THE COURT:  Now, by contrast to state sentencing where

9  we would determine the effective date of that, and the credit, in

10 Federal Court, we determine the sentence -- make the

11 determination as to whether the sentence is to be imposed

12 concurrently or consecutively and then the Bureau of Prisons will

13 actually do the calculation as soon as the gentleman is in their

14 custody.

15          We have done what we can, by that I mean the Court, both

16 to make a determination with respect to the concurrent nature of

17 the sentence.  Indeed, that's part of the Rule 11 Agreement in

18 the case.

19          MS. GRACEY:  Okay.  Thank you.

20          THE COURT:  I believe that the effective date for

21 purposes of a determination of his federal sentence will be the

22 date that he was placed in custody by the Department of

23 Corrections for the parole violation.

24          MS. GRACEY:  Thank you.

25          THE COURT:  Thank you.  Any other questions or

Sentencing Hearing

20

1  objections?

2         MS. GRACEY:  No.

3         THE COURT:  From the government?

4         MS. DILL:  No, your Honor.

5         THE COURT:  Mr. Schuett, one concluding matter.  Part of

6  the Rule 11 Agreement in this case, I believe -- I will double

7  check -- included an appeal waiver.  Yes.  It's in Paragraph 7.

8  It provides as follows:

9         If the sentence imposed does not exceed the maximum

10 amount allowed by Part 3 of the agreement, then defendant will

11 waive the right to appeal his conviction or sentence on any

12 grounds.

13        You can review that with Miss Gracey.  What's important,

14 however, is that if you think there is any issue that would have

15 escaped that waiver, that you thought was reviewable by the Court

16 of Appeals, it would still be necessary for you to meet the

17 deadline of filing a Claim of Appeal within 14 days of today's

18 date in order to begin that process.

19        Do you understand that, sir?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Miss Gracey, any additional business?

22        MS. GRACEY:  No.

23        THE COURT:  Miss Dill?

24        MS. DILL:  No, your Honor.

25        THE COURT:  Mr. Schuett, good luck, sir.  Thank you.

Sentencing Hearing

21

1    THE DEFENDANT:  Thank you.  Thank you, your Honor.

2    MS. GRACEY:  Thank you, judge.

3    (At 4:14 p.m. - proceedings adjourned)

4    *****

5

6    *CERTIFICATE OF COURT REPORTER*

7

8

9    I, PEG L. GOODRICH, Official Court Reporter in

10   and for the United States District Court, Eastern District

11   of Michigan, appointed pursuant to the provisions of Title

12   28, United States Code, Section 753, do hereby certify that

13   the foregoing proceedings held before the HONORABLE

14   THOMAS L. LUDINGTON, District Court Judge, is a true and

15   correct transcript of my stenotype notes in the matter of

16   UNITED STATES OF AMERICA v JEFFREY SCHUETT, File No.

17   11-20574, held on Monday, December 17, 2012.

18

19

20

21                              s/Peg L. Goodrich
                                Peg L. Goodrich, CSR, RPR, RMR
22                              Federal Official Court Reporter
                                United States District Court
23                              Eastern District of Michigan

24

25   Date:  July 17, 2013
          Bay City, Michigan