UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY PAUL SCHUETT,

    *Petitioner*                    CRIM. CASE NO: 1:11-cr-20574
                                          CIV. CASE NO.: 1:14-cv-12040

*v.*                                        DISTRICT JUDGE THOMAS L. LUDINGTON
                                          MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND
RESPONDENT'S MOTION TO DISMISS**
(Docs. 47, 53)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (Doc. 47) be **DENIED** and Respondent's motion to dismiss (Doc. 53) be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

On July 19, 2011, Petitioner Jeffrey Schuett was walking in the middle of a street lined by sidewalks, appearing to violate Mich. Comp. Laws § 257.655(1), when four patrolling police officers approached him. *United States v. Schuett*, No. 11-20574, 2012 WL 3109394, at *1 (E.D. Mich. July 31, 2012). Petitioner did not respond at first, instead continuing his jaunt down the road. *Id*. The officers quickly observed that his pocket bulged in the outline of a gun; when they questioned him he squeezed the object, more clearly revealing a gun barrel. *Id*. They placed him

on the ground and discovered a Walther, model P22, a .22 caliber semiautomatic handgun. *Id.*; (Indictment, Doc. 1.)

Petitioner's possession of the gun violated 18 U.S.C. § 922(g)(1), which prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. Because Petitioner had been convicted of at least three such crimes in the past, and they were "violent" felonies or "serious" drug offenses, he was subject the fifteen-year mandatory minimum in 18 U.S.C. § 924(e)(1), the armed career criminal provision. (Sentencing Hr'g, Doc. 46 at 13-14.)

His indictment for violating 18 U.S.C. § 922(g)(1) warned that the Government sought the mandatory minimum in 18 U.S.C. § 924(e)(1). He signed an acknowledgment of indictment stating "I know that if I am convicted or plead guilty, I may be sentenced as follows: . . . Imprisonment not less than 15 years & up to life/a term of supervised release, and a fine . . . ." (Acknowledgement, Doc. Doc. 8.) At his arraignment and initial appearance on October 14, 2011, the Government reiterated the fifteen year mandatory minimum; Petitioner told Magistrate Judge Binder he understood the possible sentence. (Arraignment, Doc. 40 at 4-5.)

Petitioner pleaded not guilty at the arraignment, but on September 6, 2012, after reaching an agreement with the Government, he changed his plea to guilty. (Plea Hr'g, Doc. 37.) Concerned to place Petitioner's full and complete acceptance on the record, his attorney set out the course of events leading to the agreement before the Court began the formal hearing:

> [COUNSEL]: I did communicate . . . with you [Petitioner] sometime . . . when we were last in court, that in fact that [prior plea agreement preserving appeal rights] was rejected, and you understand by signing this Rule 11 . . . that [those appeal rights] are not preserved, and once you enter into this Rule 11,

2

|  |  |
|---|---|
|  | that you will not have the right to appeal as it relates to the suppression hearing. Do you understand that? |
| DEFENDANT: | That is correct. |
| [COUNSEL]: | An it is your decision and you're doing it freely and voluntarily. Is that correct? |
| DEFENDANT: | I am. . . . |
| [COUNSEL]: | Okay. So, Judge, I just wanted that to be clear for Mr. Schuett because I know that that's been . . . an ongoing issue, and I wanted to make sure that he was clear before your Honor, that I am prepared to go to trial on this matter, but based on his decision as well as my counsel, that this would appear to be the best option for him.<br><br>And is that correct, Mr. Schuett? |
| DEFENDANT: | That is correct. |

(*Id.* at 6-7.) Petitioner was then sworn in and testified that he was satisfied with counsel's service and that he knowingly and voluntarily chose to plead guilty despite the unavoidable fifteen year sentence. *(Id.* at 9-15.) The material provisions were read, including that Defendant "knowingly and voluntarily waive[d] that right [to post-conviction proceedings] and agree[d] not [to] contest his conviction or sentence in any post-conviction proceeding, including but not limited to any proceeding under 28 U.S.C. 2255." (*Id.* at 14.) Petitioner assured the Court that no one offered promises or made threats to trick him into agreeing, (*Id.* at 15-16), he realized he was waiving the right to collateral attack, (*Id.* at 17), and his consent was voluntary. (*Id.* at 18.) The agreement included the appeal and collateral attack waivers. (Plea Agreement, Doc. 33, at 7-8.)

Magistrate Judge Binder issued a Report recommending that Judge Ludington accept the guilty plea. (Report & Recommendation, Doc. 35.) The District Court agreed on September 21, 2012, adopting the recommendation and taking the plea deal under advisement. (Order Adopting

Report, Doc. 39.) Petitioner argued for a downward adjustment based on Seventh Circuit case law and various mitigating factors, (Def.'s Sentencing Mem., Doc. 41); the Government responded that the case law was inapposite and the Court had to impose at least fifteen years. (Pl.'s Sentencing Mem., Doc. 43.) Tellingly, Petitioner never objected to his status as an armed career criminal. The Court sentenced Petitioner to the mandatory minimum. (Sentencing J., Doc. 44.)

Petitioner now brings three arguments under 28 U.S.C. § 2255 asking the court to vacate or correct his sentence.[1] (Mot. to Vacate, Doc. 47.) First, he recasts the plea deal as a product of his counsel's ineffective assistance rather than, as he repeatedly asserted at the time, his voluntary consent. (*Id.* at 4.1.) "[H]ad it not been for counsel's threat to withdraw[] from the case and, or counsel's deceit regarding the terms and conditions of the plea agreement to which he agreed to plead, Mr. Schuett would have rejected that plea agreement . . . ." (*Id.*) Specifically, counsel coerced him by promising "a capped sentence of 10-years[,] . . . dismissal of charges," and threatening to withdraw. (*Id.* at 4.1-4.2.) Had he gone to trial, "he would have been acquitted of being an armed career criminal because . . . the government would have been unable to establish he had . . . [the] requisite number of prior convictions of either a 'crime of violence' or a 'serious drug offense' . . . ." (*Id.* at 4.2)

His next argument follows from his first: the Court looked at impermissible materials to determine he was an armed career criminal. (*Id.* at 5.1.) In *Descamps v. United States*, the Supreme Court confirmed that when courts analyze whether a criminal defendant's past conviction is a "violent felony" under 18 U.S.C. § 924(e)(1), they can look only to the elements of the underlying

---

[1] Mr. Schuett twice invokes 28 U.S.C. § 2255(e), the "savings clause." (Mot. to Vacate, Doc. 47 at 5.2, 7.2.) This provision merely serves as a gateway to section 2241 habeas petitions for federal prisoners barred from section 2255 relief. His claims clearly fall under the usual section 2255 provisions, and he does not need to resort to the savings clause.

4

crime if the offense is defined in an indivisible statute. 133 S.Ct. 2276 (2013). Mr. Schuett asserts his three prior convictions were based on indivisible statutes and were not violent felonies. (Doc. 47 at 5.2.) The Court therefore botched its analysis, according to Petitioner, and must now resentence without the armed career criminal enhancements. (*Id.* at 5.3.)

His final argument latches onto *Alleyne v. United States*, 133 S. Ct. 2151 (2013). There, the Supreme Court held "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 2155. Here, Petitioner contends that the sentencing court erred when it found he was an armed career offender because this finding increased his mandatory minimum sentence, a decision reserved for juries. (Doc. 47 at 7.3.)

    **B.**    **Law and Analysis**

        *1.*    *General Law*

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

        *2.*    *Statute of Limitations*

Before reaching the merits, the Court must first address Respondent's argument that Petitioner's motion is untimely. (Resp't Resp., Doc. 53 at 6-8.) The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), contains a one-year statute of limitations for petitions seeking to vacate, set aside or correct federal sentences. 28 U.S.C. § 2255(f).[2] "Prior to [the AEDPA], a party could bring a § 2255 motion at any time." *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997). The one-year statute of limitations runs from the date the judgment of conviction becomes final. 28 U.S.C. § 2255. If a section 2255 petitioner does not pursue a direct appeal to the court of appeals, her conviction becomes final on the date she can no longer file an appeal. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002).

The time of filing in this context is measured by the prison mailbox rule: "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925. "[A]bsent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Id.* Courts liberally apply the rule, *Erwin v. Elo*, 130 F. Supp.

---

[2] 28 U.S.C. § 2255(f) states:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

2d 887, 889 (E.D. Mich. 2001), and at least one has considered a habeas petition filed on the signing date "despite the existence of some evidence that it may have been filed later." *Neal v. Bock*, 137 F. Supp. 2d 879, 882 n.1 (E.D. Mich. 2001).

Here, the Court sentenced Mr. Schuett and judgment was filed on December 19, 2012. (Doc. 44.) He had fourteen days to file an appeal, Fed. R. App. P. 4(b)(1)(A), making the conviction final on January 2, 2013. Mr. Schuett could file within one year of that date. His motion, signed under penalty of perjury, asserts he did just that: the signature is dated December 30, 2013. (Doc. 41 at 24.) The motion, however, did not arrive at the Court until May 20, 2014. (*Id.* at 25.) How it spent the intervening period is unknown. The prison mail policy does not appear to erect many speed bumps for this class of prisoner mail: prison officials cannot even inspect the contents of court filings, called "special mail," outside the prisoner's presence. Fed. Bureau of Prisons, U.S. Dep't of Justice, *Program Statement: Correspondence* Pub. No. 5265.14, at *3-5 (Apr. 5, 2011). The motion's lengthy meandering between jailhouse and courthouse thus raises suspicions; but Respondent presents no concrete proof that Petitioner "filed" it after the deadline. Consequently, I recommend finding that the filing was timely.

       3.    *Waiver*

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *accord United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Thus, the Sixth Circuit has "held that a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United*

*States*, 258 F.3d 448, 450 (6th Cir. 2001) (noting that "plea agreement waivers of § 2255 rights are generally enforceable"). However,

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel under *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*Acosta*, 480 F.3d at 422. Nevertheless, "Enforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted). Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the appellate waiver will be enforced. *Id.*

Here, I recommend that Mr. Schuett's waiver was knowing and voluntary, and accordingly should be enforced. He knew from the indictment, which he acknowledged reviewing, that he faced a fifteen year mandatory minimum. (Docs. 1, 8.) And as noted above, at the plea hearing he repeatedly affirmed to both his counsel and the Court that he understood the nature and consequences of his decision. (Doc. 37.) Counsel described in detail the steps leading to the agreement and asked Mr. Schuett whether his decision was voluntary. (*Id.* at 4-7.) He agreed, and admitted that she had assured him she would proceed to trial if he rejected the deal. (*Id.* at 7.) He then responded to the Court's extensive questioning: he understood he faced at least fifteen years imprisonment, (*Id.* at 9); he had frequent talks about the case with counsel and was satisfied with her performance, (*Id.* at 9-10); he recognized that the plea relinquished the right to trial and various civil rights, (*Id.* at 10); and he agreed to the prosecutor's oral summary of the deal. (*Id.* at 12-16.)

8

The Court's next line of questioning went to the voluntariness of his acceptance:

Q. Have you been promised by the Court or by your lawyer or the lawyer for the government that you will be put on probation or receive a specific sentence in return for the guilty plea?

A. Just that what's in . . . the plea agreement, your Honor.

Q. All right. In other words, nobody has promised you that you're going to get put on probation.

A. No, your Honor.

Q. Nobody has promised you that you will definitely get Sentence X, Y, Z. Correct?

A. No, your Honor.

Q. All right. . . . [H]as anybody promised you anything that isn't in the Rule 11?

A. No, sir.

Q. Okay. Has anybody used force or threats, violence to try and make you plead guilty?

A. No, sir.

(*Id.* at 16.) The Court then explained that the agreement precluded appeals and collateral attacks; Petitioner said he understood. (*Id.* at 17-18.) He further acknowledged brief descriptions of the three predicate offenses and responded to questions regarding his armed career criminal status:

Q. Now, those convictions, according to the agreement, give you what's called the status of armed career criminal. Do you understand that?

A. Yes, I do, your Honor.

Q. And that has impact on the calculations of the guidelines that we've talked about before. Do you understand that?

A. Yes, I do, sir.

(*Id.* at 20.)

9

The sentencing hearing was similarly extensive. Mr. Schuett's counsel agreed that 180 months was the mandatory minimum due to his armed career criminal status. (Doc. 46 at 5-6.) Defendant stated that while he believed the mandatory minimum was an "injustice," he was nonetheless "aware the Court must impose the 15-year mandatory minimum sentence for me for the crime I committed." (*Id.* 8-9.) He added that he was not a "career criminal," but he used the terms in their colloquial rather than legal sense. (*Id.* at 9.) The Assistant United States Attorney again detailed the predicate convictions, describing facts pertinent to the Court's 18 U.S.C. § 3553 analysis. (*Id.* at 12-13.) Petitioner did not object to any descriptions.

Petitioner's first claim does no more than incant dubious facts that raise the waiver exception. Consequently, he cannot prevail on the merits. He claims the plea agreement was the product of counsel's ineffective assistance, specifically because she threatened to withdraw and made false promises that he would have a ten-year capped sentence. (Doc. 47 at 4.1-4.2.) A counsel's erroneous sentencing predictions generally are not grounds for ineffective assistance claims. *See United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993) ("[I]t is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea."); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[A] mere inaccurate prediction, standing alone, would not constitute ineffective assistance . . . ."); *United States v. Quintilliano*, No. Crim A. 81-000260(01), 1986 WL 5817, at *2 (E.D. Penn. May 19, 1986) (noting cases holding "that an erroneous prediction of a sentence by a defendant's counsel does not render a guilty plea involuntary"). In other words, a defendant does not need prescient counsel for his decision to be informed. There is no evidence that counsel told him he would get ten years; she said the opposite at sentencing. (Doc. 46 at 6-8.)

The plea acceptance can be involuntary, however, if it results from such coercion or external influence, including from the petitioner's own counsel, that the individual's choice was clearly heteronomous rather than autonomous. *See Iaea*, 800 F.2d at 867 ("Several courts have held or indicated that coercion by the accused's counsel can render a plea involuntary."); *Edwards v. Garrison*, 529 F.2d 1374, 1380 (4th Cir. 1975) ("A guilty plea is not voluntary and must be stricken if that free will is overborne by the prosecutor or by the accused's lawyer."); *Downton v. Perini*, 511 F. Supp. 258, 266 (N.D. Ohio 1981) ("I find that there is uncontroverted evidence that the attorney threatened to withdraw unless a plea was entered; and I find further that . . . the petitioner's plea was not voluntarily entered."). The threat to withdraw as counsel, made to induce the client into taking the plea deal, can set up a successful collateral attack for ineffective assistance despite waivers. *See e.g.*, *Peete v. Rose*, 381 F. Supp. 1167, 1170 (W.D. Tenn. 1974) ("The issue here, then, in determining whether petitioner's guilty plea was voluntary, turns on whether it was induced by 'threats' made by his own court-appointed counsel.").

Of course, the petitioner must first convince the court of the coercive force of the threats; here, the evidence Mr. Schuett presents fails to persuade. *See Morgan v. United States*, No. CIVA 7:05CV00636, 2006 WL 2125933, at *4 (W.D. Va. July 27, 2006) (finding that petitioner's claims that counsel coerced him into taking the plea implicated the voluntariness of the plea and thus the waiver exception, but were "patently incredible"). According to his motion, Mr. Schuett's counsel cajoled and coerced him into pleading guilty. But as shown above, the record reveals that these assertions are incredible: counsel stated in court, and Petitioner agreed, that she would represent him at trial if he declined the agreement, (Doc. 37 at 6-7), and that Petitioner was subject to a fifteen year sentence, not ten. (Doc. 46 at 6-8.) Had she withdrawn, Mr. Schuett would have

11

received new counsel for trial, which somewhat mitigates the alleged threat. *But see Heiser v. Ryan*, 951 F.2d 559, 561 (3d Cir. 1991) ("A threat by a defendant's attorney to withdraw from the case if the defendant does not plead guilty may render a guilty plea involuntary. This is true notwithstanding the mitigating effect of an attorney's assurance that new counsel would be appointed if the defendant insisted on proceeding to trial." (citations omitted)). Magistrate Judge Binder suggested as much to him at the plea hearing, telling Mr. Schuett that he was entitled to a lawyer at trial. (Doc. 37 at 11.) In any case, Mr. Schuett's facts ring hollow and I recommend the claim be dismissed.

I suggest that Mr. Schuett's last two claims, in contrast, are waived and would fail in any case. Neither the *Descamps* nor the *Alleyne* contentions relate to the voluntariness of the agreement.[3] These are the type of claims he waived when he accepted the Rule 11 agreement. The agreement stated that the parties agreed "the court must impose a sentence of imprisonment on count one of at least 15 years." (Doc. 33 at 3-4 (emphasis omitted).)

Alternatively, neither case would aid his argument even if not waived. He contends that the Court here determined he was an armed career criminal by using the approach prohibited by *Descamps*. (Doc. 47 at 5.1.) The Court in *Descamps* did not intend to create a new rule, but instead sought to summarize precedent. *See Descamps*, 133 S.Ct. at 2283 (noting that the holding was "all but resolve[d]" by prior case law). Accordingly, courts have not found it to be a new rule. *United*

---

[3] Only a thin, likely unintentional connection between them can be discerned. Petitioner's ineffective assistance argument asserts that counsel promised him a ten year sentence. (Doc. 47 at 4.1.) Taken together with the substance of his second and third claims, this could suggest that Mr. Schuett is blaming her for failing to challenge his armed career criminal status. That would bring him a step closer to meeting the waiver exception: the plea was the product of her allegedly bungled legal analysis. Stated differently, had she not agreed with the armed career criminal status, he would have declined the agreement. But he does not develop this argument in his last two claims. The plea he signed, along with the multiple hearings he attended, put him on warning that he would be classified as an armed career criminal and subject to increased penalties. He waived the opportunity to contest this.

12

*States v. Montes*, No. 14-2015, 2014 WL 3032185, at *1 (10th Cir. 2014); *United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014). The Sixth Circuit in *Davis* stated, "The Supreme Court in *Descamps* explained that it was not announcing a new rule, but was simply reaffirming the *Taylor*/*Shepard* approach, which some courts had misconstrued." 751 F.3d at 775. Thus, it used the *Descamps* holding to analyze a section 2255 motion from a prisoner who was convicted and sentenced prior to the Supreme Court's decision.[4]

The plea agreement he signed contained the penalties resulting from the armed career classification; he waived his claims then. If he had lingering doubts, he could have presented them at sentencing, but he did not. *See Arbuckle v. United States*, Nos. 90-175-CR-T-17C, 93-642-CIV-T-17C, 1994 WL 378680, at *2 (M.D. Fla. June 22, 1994) ("Failure to lodge a timely objection during sentencing constitutes a waiver of the right to raise such an allegation for the first time in a § 2255 motion." (citing *United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987))). Thus, in addition to being waived, the claim is also likely procedurally barred.

Even if he could bring the claim now, after first waiving it and then failing to raise it at sentencing, it would fail. He never points to the outside materials the Court used–indeed, the parties themselves first determined the convictions qualified as violent felonies. Nor does he list the underlying statutes and show they are indivisible. In fact, his proposed analysis for finding they were not violent felonies seems to violate *Descamps* if, as he claims, the statutes were indivisible:

---

[4] Many courts, responding to the argument that *Descamps* created a new rule, note that the holding is not retroactive. *See* e.g.*, United States v. Patrick*, Nos. 6:06-034-DCR (Crim.), 6:14-7357-DCR (Civ.), 2014 WL 2991857, at *1 (E.D. Ky. July 2, 2014) ("[T]he holding in *Descamps* has no retroactive effect."). It is difficult to see how old rules are not already retroactive. As William Blackstone wrote, perhaps not accurately reflecting modern practice but still capturing the heart of the matter: "judges do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law*, but that it was *not law* . . . ." 1 William Blackstone, Commentaries *70.

discussing his 2000 conviction for fleeing police officers, he asserts, "[T]he underlying offense conduct to which Mr. Schuett was required to plead, amounted to nothing more than a failure to yield to a blue light, rather than a high speed police chase as fleeing and eluding would suggest . . . ." (Doc. 47 at 5.3.) This heavily factual recitation, used to determine the nature of the crime, is precisely what *Descamps* prevents. And, in any case, the Sixth Circuit has held that convictions for fleeing and eluding police in the third degree under Michigan law are "violent felonies" for purposes of 18 U.S.C. § 924(e)(1). *See United States v. LaCasse*, 567 F.3d 763 (6th Cir. 2009).

*Alleyne* is not retroactive and would not apply to Mr. Schuett's case if it were. He complains that *Alleyne* places with the jury, not the court, the decision to find the prior conviction is a violent felony under 18 U.S.C. § 924(e)(1). (Doc. 47 at 7.1.) The Sixth Circuit, deciding the *Alleyne* was not retroactive, explained, "[I]t is not a substantive rule and it also does not meet the high standard for new rules of criminal procedure." *In re Mazzio*, 756 F.3d 487 (6th Cir. 2014) *See also Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). In any case, *Alleyne* would apply to Mr. Schuett's argument only if the prior convictions are treated as elements of the crime rather than sentencing factors. *Alleyne*, 133 S. Ct. at 2158. They are not: *Alleyne* did not disturb *Almendarez-Torres v. United States*, which noted that "prior commission of serious crime . . . is as typical a sentencing factor as one might imagine." 523 U.S. 224, 230 (1998). *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014) (noting that *Alleyne* "itself recognizes that federal courts treat the fact of prior convictions differently than other facts that might trigger a change in a defendant's minimum or maximum sentence"). Mr. Schuett's argument on this point is therefore waived, inapplicable because *Alleyne* is not retroactive, and meritless. I recommend that it be dismissed.

    **D.**    **Evidentiary Hearing**

14

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Mr. Schuett is not entitled to a hearing on the allegations raised in his motion.

**E.     Conclusion**

15

I recommend that the Court deny Mr. Schuett's motion and grant Respondent's motion to dismiss because he fails to show either a defect or prejudice supporting his ineffective assistance of counsel argument.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same

order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 12, 2014  /S PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Order was electronically filed this date and served upon all counsel of record through the Court's CM/ECF system.  A hard copy was also mailed to Jeffrey Paul Schuett 46369039, Gilmer Federal Correctional Institution, PO Box 6000, Glenville, WV 26351.

Date:  September 12, 2014  By  s/Kristen Krawczyk
Case Manager Specialist

17